# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

REGINA DE LA ROSA,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

Case No. 1:18-cv-00938-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

On July 11, 2018, Plaintiff Regina De La Rosa ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

///

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 8.)

## II. FACTUAL BACKGROUND

On July 23, 2014, Plaintiff protectively filed an application for DIB payments, alleging she became disabled on November 15, 2013 due to bipolar disorder, anxiety, and drug and alcohol abuse. (Administrative Record ("AR") 16, 18–19, 40, 56, 144–50, 163.) Plaintiff was born on October 3, 1978 and was 35 years old as of the alleged onset date. (AR 25, 40, 56, 144, 163.) Plaintiff has a high school education and past work experience as a cashier and an elections clerk, and last worked full-time in 2013. (AR 12, 25, 35–36, 193.)

**A.     Relevant Medical Evidence[2]**

**1.     Ravi Goklaney, M.D.**

On November 1, 2013, Plaintiff established care with psychiatrist Dr. Ravi Goklaney to treat her bipolar disorder and symptoms of depression and anxiety. (AR 249–50.) During her initial evaluation, Dr. Goklaney noted Plaintiff had been manic-depressive since her teenage years and based on her description of the symptoms, her disorder appeared severe. (AR 249.) Plaintiff reported feelings of sadness, worthlessness, mood elevation, insomnia, agitation, and racing thoughts. (AR 249–50.) Dr. Goklaney also noted that Plaintiff had been treated for bipolar disorder starting some time in 2010 and had been taking multiple medications since then. (AR 249.) Dr. Goklaney diagnosed Plaintiff with "Bipolar I, severe," and started her on Seroquel and Trileptal. (AR 250.)

In a progress note dated November 18, 2013, Dr. Goklaney noted that Plaintiff's sadness, social difficulties, feelings of worthlessness, manic and depressive episodes, racing thoughts and agitation had all worsened. (AR 252.) Dr. Goklaney also noted Plaintiff was fully oriented and her cognitive functioning was in the normal range, social judgment was intact, and she was cooperative and attentive during the session. (AR 252.) Dr. Goklaney started Plaintiff on 20 milligrams of Prozac following the appointment. (AR 252.)

On December 19, 2013, Dr. Goklaney noted that Plaintiff's sadness, worrying, social isolation, sleep difficulty, racing thoughts, and functioning at work had worsened, but her cognitive

---

[2] As Plaintiff's assertions of error is limited to the ALJ's assessment of the medical opinion evidence related to her mental impairments (*see* Doc. 13 at 8–15), only evidence relevant to Plaintiff's alleged mental impairments is set forth below.

functioning, memory, orientation, social judgment, and behavior all appeared normal. (AR 254.) Dr. Goklaney recommended Plaintiff take a leave of absence from work until January 20, 2014 "to gain stability[,]" and increased her Seroquel dosage, continued her Trileptal and Prozac, and started her on Klonopin. (AR 254–55.) On January 15, 2014, Dr. Goklaney noted Plaintiff exhibited symptoms of mania and her mood irritability had worsened, but her energy level had increased and her sleep patterns had improved. (AR 256.) Plaintiff returned to Dr. Goklaney on February 6, 2014, and reported she was improving and her symptoms had lessened in frequency and intensity. (AR 257.) Plaintiff reported further improvement on April 17, 2014, although she still exhibited symptoms. (AR 262.) Dr. Goklaney's treatment notes from Plaintiff's visits in April 2014 stated that Plaintiff had recently gone back to work and continued taking her medications. (AR 260–65.)

Through the rest of 2014, Dr. Goklaney noted Plaintiff was generally improving and that her behavior was cooperative and attentive with no gross behavioral abnormalities. (*See* AR 266, 292–319.) For example, on May 19, 2014, Dr. Goklaney noted that despite some issues, Plaintiff's symptoms had "improved as they [were] less frequent or less intense[,]" Plaintiff was taking her medication as directed, and her "self care skills" were "intact and unimpaired." (AR 306.) On June 19, 2014, Dr. Goklaney again noted Plaintiff's symptoms had improved and were less intense. (AR 304.) Dr. Goklaney also noted Plaintiff's "work performance [was] impaired" but stated her "school performance [was] normal" and that she was continuing to improve generally. (*See* AR 304.) On July 17, 2014 and August 7, 2014, Dr. Goklaney stated Plaintiff's symptoms continued to improve and her work performance was "marginal" as opposed to "impaired." (AR 300, 302.) In a progress note dated September 12, 2014, Dr. Goklaney again stated Plaintiff's "functioning at work [was] marginal." (AR 298.) On October 9, 2014, Dr. Goklaney noted that Plaintiff was continuing to improve and her school performance was normal, but her work performance had returned to "impaired." (AR 296.)

On October 27, 2014, Dr. Goklaney completed a medical source statement that stated Plaintiff suffered from "Bipolar I, severe," had slow speech and blunted affect, and was inattentive, tense, soft, glum, downcast, anxious, and easily distracted. (AR 269.) Dr. Goklaney opined Plaintiff had marked limitations in restriction of activities of daily living and difficulties in maintaining social

functioning, extreme limitations in difficulties in maintaining concentration, persistence, or pace, and four or more episodes of decompensation within the past 12 months. (AR 273.) Dr. Goklaney opined that Plaintiff was "unable to meet competitive standards" in all applicable mental abilities necessary to perform work activities. (AR 271–72.)

On March 6, 2015, Plaintiff established care with Omni Family Health in Bakersfield, California, where Dr. Goklaney continued to treat her.[3] (*See* AR 636-744.) On March 20, 2015, Dr. Goklaney restarted Plaintiff on Seroquel, Benztropine, Lexapro, Depakote, and Klonopin. (AR 694.) During visits in July and September 2015, Plaintiff reported to Dr. Goklaney that her symptoms were controlled by medication. (AR 707–09.) In January 2016, she reported an increase in symptoms but also noted she had been off her medication. (AR 724–26.) Dr. Goklaney submitted mental capacities forms on July 20, 2016, October 28, 2016, and November 2, 2016, each opining that Plaintiff was unable to work due to her mental illness. (AR 478–80.) On January 4, 2017, Dr. Goklaney noted Plaintiff complained of mood swings and feeling irritable, angry, and getting upset easily. (AR 742–44.)

Dr. Goklaney submitted a second medical source statement on Plaintiff's behalf on January 4, 2017. (AR 481–86.) In the second statement, Dr. Goklaney stated Plaintiff suffered from bipolar disorder, "current episode depressed," and "agoraphobia with panic disorder" and her prognosis was severe, chronic and persistent. (AR 481.) He noted Plaintiff's symptoms included depression, mood swings, fatigue, anxiety, panic attacks and racing thoughts. (AR 481.) Dr. Goklaney opined that in Plaintiff's current state she was "unable to effectively complete work-like procedures and interact with others in the workforce." (AR 484.) Dr. Goklaney also opined Plaintiff had moderate limitations in restriction of activities of daily living and marked limitations in difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace, and had three episodes of decompensation within the last 12 months. (AR 485.)

Dr. Goklaney opined Plaintiff was "limited but satisfactory" in her ability to remember work-like procedures, understand and remember short and simple instructions, carry out short and

---

[3] Plaintiff began reporting to Omni Family Health for her treatment with Dr. Goklaney because she could no longer afford the insurance payments for visits to Dr. Goklaney's private office. (AR 686.)

simple instructions, and understand and remember detailed instructions; "seriously limited, but not precluded" in her ability to maintain attention for two hour segments, maintain regular attendance and be punctual, sustain an ordinary work routine, ask simple questions or request assistance, deal with normal work stress, be aware of normal hazards, carry out detailed instructions, deal with stress of semiskilled and skilled work, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness; and "unable to meet competitive standards" in her ability to work in coordination with others, make simple work-related decisions, complete a normal workday, perform at a consistent pace, accept instructions and criticism from supervisors, get along with coworkers, respond appropriately to changes in a work setting, set realistic goals or make plans independently, interact appropriately with the general public, travel in an unfamiliar place, and use public transportation. (AR 483–84.)

### 2. Alexis Valos, Ph.D.

On March 11, 2015, psychologist Dr. Alexis Valos interviewed Plaintiff for a psychological consultative evaluation. (AR 379-84.) Dr. Valos noted Plaintiff was alert and oriented for the interview and was cooperative and polite throughout. (AR 381.) Plaintiff's affect was "depressed and flat," her speech was normal, her thought content was normal and goal-oriented, and she was able to effectively communicate. (AR 381.) Dr. Valos noted that Plaintiff's attention and concentration were below average, memory appeared mildly impaired, and her intelligence was below average. (AR 381.) Dr. Valos found that Plaintiff could "carry out various simple tasks, which require focused attention, concentration, and memory skills" but Plaintiff could not carry out complex tasks. (AR 382.) Dr. Valos opined that Plaintiff suffered from bipolar disorder and anxiety disorder, and her "daily activities and social functioning appear[ed] to be vulnerable to episodes of deterioration in a work-like situation." (AR 382.) Dr. Valos further opined that Plaintiff's "social or emotional impairments suggest that [Plaintiff would] have difficulty in tolerating the stresses, pressures, and changes in routine that are usually associated with day-to-day work activities." (AR 382.)

### 3. John Murphy, LMFT

On December 1, 2014, therapist John Murphy completed an evaluation of Plaintiff based on his approximately three meetings with her from 2011 through November 2013. (AR 275-91.) Mr. Murphy noted Plaintiff had been diagnosed with bipolar disorder and that her mood was normal, anxious, depressed, fearful, elated, euphoric, angry and unpredictable, and her affect was appropriate, labile, expansive, blunted, flat and constricted. (AR 275–78, 280.) Based on his evaluation of Plaintiff, Mr. Murphy opined that Plaintiff had fair ability to understand, remember, and carry out complex instructions, and respond appropriately to changes in a work setting; good ability to understand, remember, and carry out simple instructions; and poor ability to maintain concentration, attention and persistence, perform activities within a schedule and maintain regular attendance, and complete a normal workday and workweek without interruptions from psychologically based symptoms. (AR 277.)

### 4. Kern Medical Center

On January 10, 2015, Plaintiff was admitted to the emergency department of Kern Medical Center for a reported overdose on multiple medications, categorized as a suicide attempt. (*See* AR 330–78.) Paramedics arrived to find Plaintiff alert and oriented but stating she "took 16 pills because she was depressed." (AR 336.) Plaintiff also had "4 superficial cuts on her arm with bleeding controlled." (AR 336.) The treating nurse noted Plaintiff suffered from depression and bipolar disorder and stated she took a combination of her psychiatric medications that day including Seroquel, Lexapro, and Klonopin. (AR 349.) Plaintiff was kept overnight in the emergency department and discharged on January 11, 2015, and directed to follow up with her primary care physician within a week. (AR 347–59, 362.)

### 5. State Agency Physicians

On May 27, 2015, D. Funkenstein, M.D., a Disability Determinations Service medical consultant, assessed the severity of Plaintiff's impairments and found that Plaintiff had moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace, had moderate restriction of activities of daily living, and had the severe impairment of affective

disorders. (AR 48.) In assessing Plaintiff's mental residual functional capacity (RFC),[4] Dr. Funkenstein opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine, complete a normal workday, interact appropriately with the general public, accept instructions and criticism from supervisors, get along with coworkers, and respond appropriately to changes in the work setting. (AR 49–51.) Dr. Funkenstein further stated that Plaintiff had no limitation in her ability to remember locations and work-like procedures, understand and remember short and simple instructions, carry out short and simple instructions, work in coordination with others, make simple work-related decisions, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanness, be aware of normal hazards, travel in unfamiliar places, and set realistic goals or make plans independently. (AR 49–51.)

Upon reconsideration, on September 21, 2015, another Disability Determinations Service medical consultant, Joshua Schwartz, Ph.D., affirmed Dr. Funkenstein's findings as to the severity of Plaintiff's impairments and her mental RFC.[5] (AR 64–65, 68-70.)

**B.      Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on May 27, 2015, and again on reconsideration on September 21, 2015. (AR 78–83, 85–90.) On October 9, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 91.)

On March 13, 2017, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 27–39.) Plaintiff testified that she cannot work because she gets "really bad anxiety, and just nervousness, anxious, scared." (AR 31.) Plaintiff stated that she

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

[5] Also at the reconsideration level, a third Disability Determinations Service medical consultant, J. Bonner, M.D., found for the first time that Plaintiff should avoid concentrated exposure to extreme cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation, due her alleged asthma. (AR 66-67.)

is unable to do daily things like read or watch television because she cannot keep focused, and that she takes five-hour naps about three days per week. (AR 32.) Plaintiff testified that the medications she takes make her "dizzy and drowsy" so she needs to take frequent naps, but that the medications also keep her anxiety more stable. (AR 32–33.) Plaintiff stated her anxiety causes her problems with relating to other people and problems with concentration and focus. (AR 34.) Plaintiff stated the last time she worked, in 2013, her anxiety was so bad that she was "sick to [her] stomach" and had to relieve herself in the trash can because she could not make it to the bathroom, and the thought of returning to work is scary for her. (AR 35–36.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a cashier, Dictionary of Occupational Titles (DOT) code 211.482-010, which was sedentary work with a specific vocational preparation (SVP)[6] of 3; and an elections clerk, DOT code 205.367-030, which was sedentary work with a SVP of 2. (AR 37.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her work background. (AR 37.) The VE was also to assume this person would have no exertional limits but should avoid extreme cold, wetness, humidity, and fumes, odors, dust, gases, and poor ventilation, and should also be limited to nonpublic, simple, routine work. (AR 37.) The VE testified that such a person could not perform Plaintiff's past relevant work. (AR 37.) The VE testified such a person could perform other jobs in the national economy, however, including: housekeeping cleaner, DOT code 323.687-014, which is light work with a SVP of 2 with approximately 450,000 jobs available in the national economy; industrial cleaner, DOT code 381.687-018, which is medium work with a SVP of 2 with approximately 950,000 jobs available; and packing line worker, DOT code 753.687-038, which is light work with a SVP of 2 with approximately 300,000 jobs available. (AR 37–38.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first hypothetical except that the person would miss four or more days of work per month. (AR 38.) The VE testified, based on her expertise, that such a person could not perform

---

[6] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

8

Plaintiff's past relevant work or any other work in the national economy. (AR 38.)

**C.    The ALJ's Decision**

In a decision dated May 23, 2017, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 16–26.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 18–26.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since November 15, 2013, the alleged onset date (step one). (AR 18.) At step two, the ALJ found that Plaintiff had the following severe impairments: "bipolar"; "anxiety"; and "drug and alcohol abuse." (AR 18.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 18.) The ALJ further found at step three:

> [Plaintiff's] mental impairments caused moderate limitations in understanding, remembering, or applying information, moderate limitations in interacting with others, moderate limitations in concentrating, persisting, or maintaining pace, and moderate limitations in adapting or managing oneself.

(AR 19.)

The ALJ assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: avoid concentrated exposure to extreme cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation; work should be simple and routine and nonpublic.

(AR 19.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 20.) At step five, the ALJ found that Plaintiff could not perform any past relevant work but that jobs exist in significant numbers in the national economy that Plaintiff could perform. (AR 24–25.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 11, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III. LEGAL STANDARD

#### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any

step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.  Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in his evaluation of the opinions of Dr. Goklaney and Dr. Valos. (*See* Doc. 13 at 8–15; Doc. 17 at 6–13.) The Commissioner responds that the ALJ properly evaluated Dr. Goklaney's and Dr. Valos' opinions and the portions of the opinions rejected or given little weight were unsupported by and inconsistent with the medical evidence. (Doc. 17 at 6–13.) For the reasons stated below, the Court agrees with the Commissioner's position.

**A.     The ALJ's Consideration of the Medical Opinions**

**1.     Legal Standard**

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495

F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[7] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

---

[7] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

## 2. Analysis Regarding Plaintiff's Treating Physician Dr. Goklaney

Plaintiff alleges—and the record reflects—that Dr. Goklaney was Plaintiff's treating physician. (*See, e.g.*, Doc. 13 at 8.) "If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *cf. Reddick*, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)). "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given." *Id.* at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion;" (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2)–(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). *See also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by

14

clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995))); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Dr. Goklaney treated Plaintiff from approximately November 2013 until at least 2017 (*See* AR 249, 481.) On October 27, 2014, Dr. Goklaney opined that Plaintiff was "unable to meet competitive standards" in all applicable mental abilities necessary to perform work activities. (AR 271–72.) On July 20, 2016, October 28, 2016, and November 2, 2016, Dr. Goklaney opined that Plaintiff was unable to work due to her mental illness. (AR 478–80.) On January 4, 2017, Dr. Goklaney opined that in Plaintiff's current state she was "unable to effectively complete work-like procedures and interact with others in the workforce." (AR 484.)

In weighing Dr. Goklaney's opinion, the ALJ stated:

> Dr. Goklaney's opinions are given less weight because they are inconsistent with the record as a whole as well as his own treatment notes that are replete with references of improvement as well as the medication controlling [Plaintiff's] symptoms.

(AR 24.) The ALJ cited to numerous treatment notes to support the finding that Dr. Goklaney's opinion was inconsistent with his treatment notes. (*See* AR 21–22.) Although not explicitly stated by the ALJ, Dr. Goklaney's opinions were inconsistent with those of Dr. Funkenstein and Dr. Schwartz as well.[8] (*Compare* AR 481–84 *with* AR 49–51, 64–65, 68-70.) Thus, the ALJ was only

---
[8] The ALJ did explicitly state he adopted the opinions of Dr. Funkenstein and Dr. Schwartz because they were supported by the medical evidence. (AR 23.)

15

required to state "specific and legitimate" reasons, supported by substantial evidence, for assigning little weight to Dr. Goklaney's opinion. *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.

Here, the ALJ properly gave little weight to Dr. Goklaney's opinion that Plaintiff's symptoms were severe enough that she was unable to work and properly found the opinion was inconsistent with the medical evidence of record and Dr. Goklaney's own treatment notes. First, Dr. Goklaney's assessments as to the severity of Plaintiff's impairments and Plaintiff's mental RFC were inconsistent with those of Dr. Funkenstein and Dr. Schwartz. (*Compare* AR 481–84 *with* AR 49–51, 64–65, 68-70.) For example, Dr. Goklaney opined that Plaintiff was "unable to meet competitive standards" in her ability to make simple work-related decisions and work in coordination with others, while Dr. Funkenstein and Dr. Schwartz both opined that Plaintiff had no limitation in those areas. (*See, e.g.,* AR 50, 484.) Next, Dr. Goklaney's opinion that Plaintiff was unable to function in a work setting is inconsistent with his treatment notes stating at times that Plaintiff's work performance was "marginal" as opposed to "impaired" and her school performance was "normal," that her symptoms were consistently improving and controlled with medication, and that her behavior was normal, attentive, and had no gross abnormalities. (*See generally* AR 254–66, 292–319, 636–744.) Thus, the ALJ properly rejected Dr. Goklaney's opinion by pointing out "inconsistencies and ambiguities" in Dr. Goklaney's own treatment notes and inconsistencies with the medical evidence in the record. *See Matney on Behalf of Matney*, 981 F.2d 1020.

Finally, to the extent Plaintiff argues the ALJ improperly rejected Dr. Goklaney's opinion that Plaintiff was unable to work, that is a conclusion reserved for the Commissioner. *See Murillo v. Colvin*, No. CV 12-3402-MAN, 2013 WL 5434168, at *4 (C.D. Cal. Sept. 27, 2013) ("[T]he ALJ provided a specific and legitimate reason for disregarding [the treating physician's] ultimate conclusion … that plaintiff is disabled" (citing 20 C.F.R. § 404.1527(e)(1))); *Soroka v. Berryhill*, No. 1:17-CV-01571-GSA, 2018 WL 6243020, at *10 (E.D. Cal. Nov. 29, 2018) ("A conclusory

16

opinion that a claimant is disabled is entitled to little weight since the Commissioner 'will not give any significance to the source of an opinion on issues reserved to the Commissioner,' including whether a claimant is disabled" (quoting *Calhoun v. Berryhill*, 734 F. App'x 484, 487 (9th Cir. 2018)). Thus, the ALJ properly rejected Dr. Goklaney's opinion on the issue of disability as well.

### 3. Analysis Regarding Plaintiff's Examining Physician Dr. Valos

Dr. Valos evaluated Plaintiff on March 11, 2015 and gave an opinion regarding Plaintiff's ability to work. (AR 379–84.) Dr. Valos opined that Plaintiff's "daily activities and social functioning appear[ed] to be vulnerable to episodes of deterioration in a work-like situation" and that Plaintiff's impairments "suggest that [Plaintiff] will have difficulty in tolerating the stresses, pressures, and changes in routine that are usually associated with day-to-day work activities." (AR 382.) Dr. Valos also found Plaintiff could carry out simple tasks but not complex tasks. (AR 382.)

In weighing Dr. Valos' opinion, the ALJ stated:

> Dr. Valos found [Plaintiff] would have difficulty interacting with coworkers, supervisors, and the public in a work-like situation, tolerating the stresses, pressures, and changes in routine associated with day-to-day work activities, and adapting to changing cognitive demands associated with day-to-day work activities. Dr. Valos found [Plaintiff] could carry out various simple tasks, which require focused attention, concentration, and memory skills, and understand and follow basic directions … I afford the opinions of Dr. Valos partial weight in light of the fact that there is no indication in the record that she would be unable to interact with coworkers, supervisors, or the public. The overall treatment record shows she seemed to interact well with treaters and office staff. However, the remaining opinion is given substantial weight because it is consistent with the objective medical evidence as a whole.

(AR 24.) As noted above, the ALJ adopted the findings of the State agency physicians as their opinions were consistent with the medical evidence as a whole. (*See* AR 23.) In sum, the ALJ partially discounted Dr. Valos' opinion because the opinion was inconsistent with other medical evidence and opinions in the record. Because Dr. Valos' opinion was contradicted by the medical opinion evidence of Disability Determination Services non-examining consultants Drs. Funkenstein and Schwartz, the ALJ was required to state "specific and legitimate" reasons, supported by

substantial evidence, for partially rejecting Dr. Valos' opinion. *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1998); *see also Lester*, 81 F.3d at 830.

Here, the ALJ credited the part of Dr. Valos' opinion that was supported by the medical evidence and other opinions—that Plaintiff could carry out only simple tasks—and included that limitation in the RFC assessment. (AR 19, 24.) That part of Dr. Valos' opinion was supported by medical evidence including Dr. Goklaney's treatment notes and the opinions of the State agency physicians. (*See* AR 49–51, 64–65, 68-70, 483–84.) The ALJ then properly discounted the parts of Dr. Valos' opinion that were inconsistent with the medical evidence of record. Specifically, the ALJ discounted Dr. Valos' opinion that Plaintiff would have difficulty interacting with coworkers and supervisors and tolerating the stresses of day-to-day work activities, stating that the medical evidence showed Plaintiff interacted well with others. (AR 24.)

Although not specifically cited by the ALJ in his discussion of Dr. Valos' opinion, Dr. Funkenstein and Dr. Schwartz both opined Plaintiff had no limitation in her ability to work in coordination with others, make simple work-related decisions, ask simple questions or request assistance, and maintain socially appropriate behavior. (AR 50–51.) Opinions of non-examining physicians "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews*, 53 F.3d at 1041; *Tonapetyan*, 242 F.3d at 1149. The opinions of Dr. Funkenstein and Dr. Schwartz are consistent with and supported by the medical evidence in the record. For example, Dr. Goklaney's treatment notes repeatedly stating that Plaintiff's behavior was cooperative and attentive with no gross behavioral abnormalities are consistent with the opinions. (*See, e.g.,* AR 296.)

Accordingly, because evidence in the medical record supports Dr. Funkenstein's and Dr. Schwartz's opinions and the ALJ must resolve conflicts and ambiguities in the medical record, *Andrews*, 53 F.3d at 1039, the ALJ did not err by relying on the opinions of Dr. Funkenstein and Dr. Schwartz and discrediting parts of Dr. Valos' opinion inconsistent with the medical evidence.

*Corder v. Comm'r*, No. 2:16-cv-1969-KJN, 2018 WL 466265, at *4 (E.D. Cal. Jan. 18, 2018) (holding the ALJ properly relied on contrary opinions from state agency physicians to discount a treating physician's opinion where the state agency physicians' opinions were consistent with the medical record); *Lott v. Berryhill*, No 2:17-cv-00986-KJN, 2018 WL 4292247, at *4 (E.D. Cal. Sept. 7, 2018) (same); *Delgadillo v. Colvin*, No. 1:12-cv-703 GSA, 2013 WL 5476413, at *7 (E.D. Cal. Sept. 30, 2013) (same).

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **June 27, 2019**　　　　　　　　　　/s/ *Sheila K. Oberto*
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE